UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARC CARTER,<br>   Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:13-CV-02083 |
| CBE GROUP, INC.,<br>   Defendant. | §<br>§<br>§<br>§ | |

## CBE GROUP, INC.'S MOTION FOR RULE 11 SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant CBE Group, Inc. ("CBE" herein), by and through the undersigned counsel, and files its Motion for Rule 11 Sanctions and would respectfully show unto the Court as follows:

### I.
### INTRODUCTION

1. CBE seeks Rule 11 sanctions against Plaintiff and his counsel on numerous grounds. First, the evidence and pleadings make it clear that Plaintiff's counsel failed to conduct a reasonable inquiry into the claims asserted against CBE. Plaintiff's Original Complaint is riddled with false facts and allegations demonstrating the absolute failure by Plaintiff's counsel to properly investigate, vet, and interview Plaintiff to assert and failure to assert a single claim with merit. The evidence attached hereto contradicts each of Plaintiff's allegations and supports the award for Rule 11 sanctions. Next, the evidence makes it clear that Plaintiff's claims fail on every allegation and the evidence at hand. Plaintiff has alleged no proper basis for his claims under the Fair Debt Collection Practices Act ("FDCPA") as well as the Texas Debt Collection Act ("TDCA") of Tex. Fin. Code § 392.

2. The bottom line in this case is that Plaintiff's counsel failed to conduct a reasonable

investigation, if any investigation at all, into the underlying facts of her client's allegations. If Plaintiff's counsel had conducted a reasonable investigation, Plaintiff's counsel would know the her client's allegations do not serve as a valid basis for claims under the FDCPA and TDCA. The evidence shows that calls were made on four (4) separate debtors' accounts and that once Plaintiff informed the number was incorrect, CBE ceased calls to the number for each account. These telephone calls, primarily unanswered telephone calls, spawned this frivolous lawsuit which Plaintiff's counsel did little to no investigation into the facts and has now burdened CBE and this Court having to address the absolute frivolous nature of this suit. The facts and evidence warrant the imposition of Rule 11 sanctions against Plaintiff and his counsel.

## II.
## STANDARD FOR SANCTIONS UNDER FED. R. CIV. P. 11

3. A court may award fees and expenses as a sanction under Rule 11. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 4:02-CV-1384-Y (N.D. Tex., April 1, 2010) (citing Fed. R. Civ. P. 11; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). The purpose of Rule 11 sanctions is to deter the filing of groundless or frivolous lawsuits. *Tompkins v. Cyr*, 995 F.Supp. 689, 692 (N.D. Tex. 1998) (citing Fed. R. Civ. P. 11 (advisory committee notes); *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 877 (5th Cir.1988)). All pleadings, motions, and other papers must comply with Rule 11 and the signature of an attorney or unrepresented party on a document filed with the court constitutes a certification that:

(1) he has conducted a reasonable inquiry into the facts that support the document;

(2) he has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and

(3) the argument is not interposed for the purposes of delay, harassment, or increasing the cost of litigation.

*Tompkins*, 995 F.Supp. at 692 (citing *Childs v. State Farm Mutual Automobile Insurance Co.,* 29 F.3d 1018, 1024 (5th Cir.1994)). This is an objective, rather than a subjective, standard of reasonableness and good faith is not a defense. *Childs,* 29 F.3d at 1024.

4. Among the bases upon which a court may award Rule 11 sanctions is the failure by a party seeking relief to properly investigate its allegations before filing suit. *Highmark*, 4:02-CV-1384-Y; *see S. Bravo Sys. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996). The plain language of Rule 11 states that it is the attorney that represents to the court, by filing, signing, or advocating a pleading, that the contentions presented in that pleading are warranted after reasonable inquiry. *Highmark*, 4:02-CV-1384-Y; *see* Fed. R. Civ. P. 11(a), 11(b). An attorney cannot bypass this requirement by simply relying on his client's opinion. See *S. Bravo Sys.*, 96 F.3d at 1375. Thus, an attorney violates Rule 11 by "giving blind deference to his client." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).

5. Furthermore, Rule 11 obligations are not measured solely at the time of filing because a party or counsel has a continuing obligation to advise the court of any changes regarding the veracity of information before the court. *See Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam); *cf. Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) ("[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff *continued to litigate* after it clearly became so.") [emphasis added]. It is well established that Rule 11 applies to all papers filed in a suit. *See, e.g., Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 870 (5th Cir. 1988). Any and every filing constitutes the party or attorney "later advocating" that the "factual contentions [in the complaint] have evidentiary support." *Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996). "When it becomes

apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). Under Rule 11, the Court can "impose an appropriate sanction upon the attorneys, law firms, or parties." Fed. R. Civ. P. 11(c).

## III.
## ARGUMENT AND AUTHORITIES

**A. Plaintiff's Counsel Has Failed to Conduct a Reasonable Inquiry into the Facts to Support the Original Complaint.**

6.     Plaintiff's counsel failed to make a reasonable inquiry into CBE's position that the lawsuit was meritless and based on inaccurate facts. Plaintiff's counsel ignored the information CBE provided and continued to litigate this frivolous suit. Rule 11 sanctions are to deter groundless and frivolous lawsuits and Plaintiff's counsel has done just that.

    1. Background of the Accounts associated with Plaintiff's Telephone Number.

7.     CBE received accounts for debts on four (4) different individuals all with the last name "Carter" where Plaintiff's telephone number was associated with their account. To protect these individual's names, CBE will reference each of these accounts as Carter 1 through Carter 4.

8.     On Carter 1, CBE received the account on January 22, 2013. One phone call was made to Plaintiff on this account on March, 12, 2013. Def. App. at 25 (Ri 10) (part of documents filed under seal). No other phone calls were made to Plaintiff's number on this account. Def. App. at 16-35 (Ri. 1-20).

9.     On Carter 2, CBE received this account on June 3, 2013. Def. App. at 36 (Ro 1). CBE made fourteen (14) calls to Plaintiff's number until CBE spoke with Plaintiff. Def. App. at 37-39 (Ro 2-4). On the fifteenth call, Plaintiff informed CBE it had the wrong number, and CBE's

account notes reflect it was a wrong number and no calls were made to this number again[1]. Def. App. at 39-40 (Ro 4-5).

10. On Carter 3, CBE began calling Plaintiff's telephone number on April 12, 2013. Def. App. at 48 (Ru 4). CBE made 25 calls on this number from April 12, 2013 through May 6, 2013 that Plaintiff did not answer. Def. App. at 44-46. After these calls, Plaintiff made an inbound call to CBE where he informed CBE that the number was incorrect. Def. App. at XXX. Plaintiff's number was not called again after he/she informed CBE that it was an incorrect number for that person. Def. App. at 41-46.

11. Last, Carter 4, CBE received the account on May 4, 2013. Def. App. at 51 (Ra 2). CBE began calling Plaintiff's number on May 11, 2013. Def. App. at 53 (Ra 4). On the first call, Plaintiff answered, informed CBE that it was the wrong number, and CBE did not call Plaintiff again on Carter 4. Def. App. at 53-61 (Ra 4-12).

12. In total, CBE made 42 calls, two (2) resulting in a busy signal, to Plaintiff from March 12, 2013 through June 24, 2013. Def. App. at 16-61. Every time Plaintiff informed CBE it had the incorrect number for the person associated with the account, CBE removed the number from the individual account and did not call Plaintiff again. *Id*.

    2. CBE Informed Plaintiff's Counsel Her Client's Claims were Groundless.

13. This suit was filed July 16, 2013. Doc. 1. On July 31, 2013, CBE's counsel sent Plaintiff's counsel a letter detailing how her client's claims were groundless. Def. App. at 1-2. In the letter, CBE's counsel also informed Plaintiff's counsel she had no viable claims under the FDCPA and TDCA against CBE because CBE called the number on four separate debtors' accounts all with different names that Plaintiff's number was linked to. *Id*. CBE's counsel then

---

[1] To clarify, On June 17, 2013, the account notes reflect a wrong number notation before the last call to Plaintiff's number. Def. App. at 38 (Ro3). The number on June 17, 2013 that was found to be a wrong number was the (512) XXX-5618 number which is evidenced by the entries time stamps of 5:14:20, and 5:14:22. *Id*.

informed Plaintiff's counsel that once Plaintiff was finally spoken to, he informed CBE the number was incorrect, CBE removed the number from the specific account, and did not call the number again on that account. CBE's counsel stated if the case was not dismissed, CBE would seek sanctions. *Id*. Further, CBE's counsel has provided Plaintiff's counsel with the account notes for each of the accounts in question. Now, Plaintiff's counsel has proceeded with this frivolous suit, at the expense of CBE and this judiciary. This Motion will demonstrate to this Court how Plaintiff's claims are wholly meritless and that Rule 11 sanctions should be imposed on Plaintiff and his counsel.

**B. Plaintiff's Alleged violation of § 1692d of the FDCPA is Frivolous Because CBE Was Not Intentionally Calling Him, Let Alone Harassing Him.**

14. Section 1692d of the FDCPA prohibits debt collectors from engaging in any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiff alleges that CBE engaged in behavior the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt." *See* Doc. 1 at 3. Plaintiff cannot prevail on this claim, however, because the evidence demonstrates CBE did not intentionally call Plaintiff, and after being informed that it was an incorrect number on each respective account, CBE never called Plaintiff again on the accounts. Simply, once Plaintiff informed CBE the phone number was incorrect for the differing accounts the phone number was related to, he never received a call again on the accounts, thereby defeating his § 1692d claims.

15. Section 1692d(5) specifically prohibits "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the substance of phone calls, or the place to

which the calls are made. *See, e.g., Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2010) (stating "whether there is actionable harassment or annoyance turns not only the volume of calls made, but also on the pattern of calls"); *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) (stating "intent to annoy, abuse, or harass may be inferred from the frequency of the calls, or the place to which the phone calls are made"). Intent may also be inferred where a debt collector continues to call a consumer after the consumer has requested that the debt collector cease and desist communication, or where the debt collector immediately calls a debtor after the debtor has hung up the phone. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516-17 (1994) (debtor requested cease and desist); and *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864, 873 (N.D. Cal. 1981) (collector called back after debtor hung up).

16. If there is no evidence that the debt collector intended to harass the called party, courts have effectively rendered the number of phone calls placed irrelevant. *See, e.g., Carman v. CBE Group, Inc.*, 2011 WL 1102842, at *5 (D. Kan. 2011); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010). For example, in *Carman*, a District Court in Kansas ruled that 149 calls during a two month period (including as many as 4 calls per day) was not harassing because "although the number of calls in September and October appears somewhat high, they are unaccompanied by any other egregious conduct to evince an intent to annoy, abuse, or harass." *Id.* at *5. Similarly, in *Arteaga*, the Court held as a matter of law that a debt collector was not in violation of § 1692d(5)—even though the debt collector called the plaintiff "daily" or "near daily"—because Plaintiff could produce no evidence that the defendant "called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested [defendant] to

cease calling her." 733 F. Supp. 2d at 1229.

17. Whether or not a debt collector is successful in contacting a consumer is also a factor to consider in determining the intent of their calling efforts. *See e.g., Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010); *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, at *6-7 (E.D. Mich. 2009). In *Tucker*, the Court held as a matter of law that 57 phone calls to the plaintiff, including seven calls in one day, did not raise a reasonable inference of intent to harass because the debt collector never spoke to the debtor, was never asked to cease calling, and never called back on the same day if it had left a message. *Id.* Similarly, in *Saltzman*, a Michigan district court granted summary judgment for a defendant who made 20 to 50 unsuccessful calls and 10 to 20 successful calls over roughly a month because the significant disparity between the number of phone calls placed by Defendant and the number of actual successful conversations with Plaintiff suggested a "difficulty of reaching Plaintiff, rather than an intent to harass.'" *Id.* at *6-7.

18. A case directly on point to this situation and from the Northern District of Texas is *Coleman v. Credit Management LP*. In *Coleman*, Judge Barbara Lynn stated the following in her Opinion and Order on Credit Management's motion for summary judgment:

> The Court must next determine whether the Defendant "caus[ed] a telephone to ring or engage[ed] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass." Intent to annoy, abuse, or harass may be inferred from the totality of the circumstances regarding the alleged repeated and continuous calling. Some courts have found as a matter of law that intent to annoy may not be inferred merely from repetitive calling, but others have found that the question of intent to annoy is a matter for the jury.
>
> Here, Defendant admits it made fourteen calls to Plaintiff's number during the period of August 9, 2010 to October 18, 2010, none of which were answered. It is undisputed that once Plaintiff called Defendant and clarified that she was not the individual sought in connection with the debt, the phone calls stopped.
>
> The Court finds that as a matter of law, Defendant cannot be found to have

>intended to annoy, abuse, or harass the Plaintiff. Plaintiff does not dispute that the calls were made in connection with a debt owed by a California resident to Time Warner Cable. Plaintiff confirms that the representative to whom she spoke made no disparaging remarks towards her nor made any threat to her. In fact, Plaintiff does not have an issue with the content of the phone calls; Plaintiff only claims that the number of calls and the time they were made show intent to harass. The Court finds that a violation of § 1692d(5) did not occur. The frequency of the phone calls averages only one per every five days, a number that does not rise to the level of abuse as a matter of law under these circumstances. The Court finds that the mistake as to the zone of the phone number, coupled with the fact that the calls ceased once Defendant discovered its error negates, as a matter of law, any intent to harass under § 1692d. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's claims under § 1692d is GRANTED.

Case 3:10-CV-02312-M (N.D. Tex. Nov. 2, 2011).

19. In this case, 42 calls were placed to Plaintiff, four (4) resulted in a busy signal, and only two (2) calls were answered. <u>Def. App.</u> at 16-61. Once Plaintiff informed CBE that the debtor the account was associated with did not live there and it was an incorrect number for the account, CBE did not call again on those accounts. <u>Def. App.</u> at 15. There is no evidence suggesting that CBE was calling Plaintiff with the intention of harassing him. In fact, all of the evidence indicates that CBE did not intend to call Plaintiff at all. <u>Def. App.</u> at 13-61. Plaintiff cannot even meet a threshold to demonstrate that UCB "caus[ed] a telephone to ring or engaging any person in telephone conversation repeatedly or continuously" because once he informed CBE they had the wrong number for the account, CBE ceased all calls to his number on each account. Just as stated in *Coleman*, how "[i]t is undisputed that once Plaintiff called Defendant and clarified that she was not the individual sought in connection with the debt, the phone calls stopped" the same happened in this case, and CBE could not have violated the FDCPA under these facts.

**C. Plaintiff's TDCA § 392.302(4) Claims Fail for the Same Reasons as Plaintiff's FDCPA § 1692d(5) Claims.**

20.     TDCA § 392.302(4) mimics FDCPA § 1692d(5) in that it makes it a violation for a debt collector to "caus[e] a telephone to ring repeatedly or continuously, or mak[e] repeated or continuous telephone calls, with the intent to harass a person at the called number." Tex. Fin. Code § 392.302(4). Again, just as in *Coleman*, once Plaintiff spoke with CBE and informed them that the number called was not associated with the debtor sought, CBE removed the number from each account and ceased calls on the account to Plaintiff. If CBE intended to harass Plaintiff, why would it cease calls on each account after Plaintiff informed it of the incorrect number? Due to this, Plaintiff cannot establish any violation of TDCA § 392.302(4) because CBE did not intend to harass him, nor did CBE make repeated or continuous telephone calls, specifically after speaking with Plaintiff. CBE requests this Court dismiss these claims.

**D. Plaintiff Cannot Obtain Injunctive Relief Under TDCA § 392.403(a)(1).**

21.     Plaintiff also seeks an injunction under the TDCA. Doc. 1 at 4. As stated above, Plaintiff cannot establish a violation of the TDCA. However, case law establishes Plaintiff cannot recover injunctive relief regardless. Standing is a prerequisite to subject-matter jurisdiction and subject-matter jurisdiction is a constitutional prerequisite to suit in both federal courts and the courts of Texas. *See Williams v. Lara,* 52 S.W.3d 171, 178 (Tex. 2001). A party invoking the court's jurisdiction "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). To do so, a plaintiff must demonstrate that the relief sought will "redress or prevent actual or imminently threatened injury to [him] caused by private or official violation of law." *Summers*, 129 S.Ct. at 1148.

22.     A person has standing if: (1) he has sustained some direct injury; (2) he has a direct

relationship between the alleged injury and the claim being adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own. *Robinson v. Neeley*, 192 S.W.3d 904, 907 (Tex. App.—Dallas 2006, no pet.). "For injunctions," however, "an additional inquiry is required, namely that plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (citing *Lyons*, 461 U.S. at 109).

23.     However, where a statute provides for a right to an injunction for a violation, a party does not have to establish the general equitable principles for a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002). When an applicant relies upon a statutory source for injunctive relief, the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law. *West v. Texas*, 212 S.W.3d 513, 519 (Tex. App.—Austin 2006, no pet.). In statutory standing cases, the analysis is a straight statutory construction of the relevant statute to determine upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category. *Williams v. Lara,* 52 S.W.3d at 178.

24.     In *Marauder v. Beall*, the Dallas Court of Appeals addressed this issue. 301 S.W.3d 817 (Tex. App.—Dallas 2009, no pet.). On appeal, Marauder argued that the trial court erred in granting an injunction against Marauder under the TDCA because "Beall failed to show a probable, imminent, and irreparable injury." 301 S.W.3d at 820. The court reasoned that because Beall sought her injunction through the TDCA's provision allowing such relief, she was not required to prove irreparable injury: "We hold that injunctive relief pursuant to the TDCA does not require proof of irreparable injury." *Id.* However, the court failed to state whether Beall was

still required to prove a probable or imminent injury or the lack of an adequate remedy at law.

25. In *Martinez v. Michael J. Scott, P.C.*, decided on August 12, 2011, in the Southern District of Texas, Judge Harmon considered the issue of injunctive relief under the TDCA. No. H-10-1619 (S.D. Tex. Aug. 12, 2011) (courtesy copy attached at <u>Def. App.</u> at 4-12). The Court recognized that while the traditional elements of injunctive relief are (1) imminent harm, (2) irreparable injury, and (3) lack of an adequate remedy at law, the TDCA did not require proof of irreparable injury because the statutory entitlement to injunctive relief superseded this equitable element. <u>Def. App.</u> at 11-12 (citing *Marauder v. Beall*, 301 S.W.3d at 820). However, the court found that the plaintiff did not allege he was imminently threatened by the action against which he was seeking an injunction and that even if he were, he had an adequate remedy at law which was to file another similar lawsuit. *Id.* Thus, the plaintiff's claim for injunctive relief was properly denied. *Id.*

26. In the present case, Plaintiff has no claim that he is imminently threatened to be contacted by Defendant. Further, even if Plaintiff did plead imminent harm, he has an adequate remedy at law – a lawsuit like this one. If Plaintiff believes he is seeking injunctive relief based on a general interest in deterring TDCA violations, the United States Supreme Court has previously explained that deterrence is an insufficient basis for imposing injunctive relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108-09, 118 S.Ct. 1003 (1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) ("Nothing support[ed] the requested injunctive relief except [plaintiff's] generalized interest in deterrence, which [was] insufficient…"). Such an interest is an insufficient basis for injunctive relief presumably because the statute or law itself accomplishes this end on its own.

27. The TDCA allows a plaintiff to seek injunctive relief to prevent or restrain a violation of

the statute. Tex. Fin. Code § 392.403(a). The phrase "prevent or restrain" seems to adopt the equitable principle of imminent harm before permitting injunctive relief. While the word "prevent" is typically associated with its normal definitions[2] – "to hinder or impede" as defined by Black's Law Dictionary or "to meet or satisfy in advance; to act ahead of" as defined by Merriam Webster – this does not seem to be the case here. Again, as explained above, the word "and" placed between injunctive relief and actual damages indicates that the conduct the TDCA is prepared to address has already occurred (there being no actual damages if no wrongful act has taken place). This squares with the fact that a TDCA action brought prior to violative conduct is tantamount to an advisory opinion which Texas' separation of powers doctrine prohibits. *See South Texas Water Authority v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). Similarly, the Texas Constitution's open-courts provision contemplates access to the courts for only those litigants who have suffered an actual injury, as opposed to one that is general or hypothetical. *Id.*

28. As a result, the words "prevent" and "restrain" in the TDCA do not mean that the court can stop the initial violation, but may see that it does not happen again or otherwise limit or restrict the action that can occur in the future. This makes sense in the context of the TDCA because the statute does not require a debt collector to cease all collection efforts after a violation has occurred. Rather, it simply permits a debtor to recover actual damages suffered as a result of a violation and permits a court to enjoin the violative conduct against the particular plaintiff, but allows the collector to continue contacting the debtor for payment.

29. Since the language of the TDCA's injunctive relief provision implicates future conduct, it inherently requires a showing that the plaintiff may be subjected to the violative conduct in the

---

[2] Merriam-Webster uses the word "prevent" in its definition of "restrain:" "to prevent from doing, exhibiting, or expressing something." However, the definition of "restrain" seems to go one step further than prevention by including the phrase, "to limit, restrict, or keep under control." Thus, rather than redundancy, the use of the two words seems to denote two different meanings – the word "prevent" indicates the absolute prohibition of an act while "restrain" indicates a limitation or restriction that is less than complete prohibition.

future. Otherwise, courts would waste valuable time and resources working to enjoin actions that have no possibility or likelihood of ever occurring to the plaintiff again. This is inefficient and impractical. If the plaintiff fails to demonstrate that there is some imminent threat or likelihood that the illegal conduct will occur again, he or she should not be afforded injunctive relief. Despite Plaintiff's belief, the *Marauder* Court, even after recognizing the equitable principles of probable, imminent, and irreparable injury, only explicitly rejected irreparable injury. Because the Dallas Court did not reject the imminence requirement and because the language of the TDCA implies the existence of this equitable principle, Plaintiff's claims for an injunction will not survive a motion to dismiss and are groundless.

**E. Plaintiff's Claims Under FDCPA § 1692f are Frivolous as CBE Did Not Collect or Attempt to Collect Any Amount from Plaintiff.**

30. FDCPA § 1692f makes it a violation for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt." 28 U.S.C. § 1692f. However, Plaintiff's Complaint is completely devoid of any factual basis or allegation that CBE actually attempted to collect anything from Plaintiff. Doc. 1. The evidence is clear that CBE was attempting to collect debts on accounts for individuals other than Plaintiff with the last name Carter. Def. App. at 13-61. No request for payment was ever made on Plaintiff. *Id*. Further, once Plaintiff informed CBE that the number called was not a number associated with the sought debtor, CBE ceased calls on that number. *Id*. So once again, Plaintiff has pled another provision with no factual basis, and where the evidence establishes the claim is frivolous warranting Rule 11 sanctions. CBE requests this Court to impose Rule 11 Sanctions against Plaintiff and her counsel for the wasteful expenses incurred by CBE and this Court and to deter future conduct of Plaintiff and his counsel.

# IV.
# CONCLUSION

31. It is clear Plaintiff's counsel failed to conduct a reasonable investigation into the facts of this case. If a reasonable investigation had been conducted after receiving the letter from CBE's counsel, this suit and motion would not be before this Court. CBE now seeks relief under Rule 11 to recover its costs and fees incurred due to this litigation, and to deter Plaintiff and his counsel from conducting similar conduct in the future.

32. Each of Plaintiff's claims under the FDCPA fail as a matter of law. Plaintiff's TDCA claims fail on the merits just as his FDCPA claims. Plaintiff's telephone number was associated with debtors who share the same last name as Plaintiff. Once Plaintiff informed CBE that the number was incorrect for each debtor, he received no other calls for those debtors. Plaintiff's claims that CBE attempted to collect a debt he did not owe are also frivolous. There is no evidence that CBE ever attempted to collect any debt or amount from Plaintiff. When Plaintiff informed CBE of the telephone number not being correct, CBE removed his number from each respective account. The evidence shows the number was removed on each account and Plaintiff was not called again. Last, despite advisement of these facts and the baseless claims, Plaintiff and his counsel did not dismiss this suit and continued litigating at CBE's expense.

33. Plaintiff's Original Complaint in this suit idealizes the filing of a frivolous lawsuit and an attorney failing to conduct any sort of reasonable investigation into the claims beforehand. CBE pointed out the incorrect and baseless allegations contained within the Original Complaint and the evidence refuting each of the problems with the suit. The purpose of Rule 11 sanctions is to deter the filing of groundless or frivolous lawsuits and this is an ideal case the Rule was made for. *Tompkins v. Cyr*, 995 F.Supp. at 692. Plaintiff's Original Complaint and the evidence attached to this motion establish the grounds for awarding Rule 11 sanctions against Plaintiff and

his counsel. CBE requests this Court grant its Motion for Sanctions as the evidence undoubtedly establishes grounds for their award.

WHEREFORE, PREMISES CONSIDERED, Defendant CBE Group, Inc. respectfully requests this Court grant its Motion for Rule 11 Sanctions and award any other relief, whether at law or in equity, justly entitled.

Respectfully submitted,

**ROBBIE MALONE, PLLC**

  /s/ Robbie Malone_____
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
XERXES MARTIN
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
TEL: (214) 346-2630
FAX: (214) 346-2631

*COUNSEL FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing document has been forwarded to Plaintiff's counsel via ECF on this 10th day of December, 2013 to:

      /s/ Robbie Malone
      ROBBIE MALONE

**CERTIFICATE OF CONFERENCE**

      This is to certify that a true and correct copy of the foregoing document was sent to Plaintiff's counsel via CM/RRR and facsimile twenty-four (24) days prior to the filing of this document to comply with the safe harbor provision of Fed. R. Civ. P. 11. The copy was mailed on November 15, 2013.

      /s/ Robbie Malone
      ROBBIE MALONE