**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Marc Carter, | : |
| Plaintiff, | : Civil Action No.: 4:13-cv-02083 |
| v. | : |
| CBE Group, Inc., | : |
| Defendant. | : |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

Plaintiff Marc Carter respectfully submits this memorandum in opposition to the Motion for Rule 11 Sanctions filed by Defendant CBE Group, Inc. ("CBE" or "Defendant"). (Doc. No. 16).

## PRELIMINARY STATEMENT

Marc Carter does not owe Defendant a penny. His misfortune here is his last name -- 46th most common in the United States -- which he shares with 362,548 Americans.[1] In his Complaint, Marc Carter seeks redress for Defendant's violations of Sections 1692d and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), and a similar Texas state law, arising from repeated debt collection calls Defendant made to him at his home in Texas after he informed Defendant that it had the wrong number and that the calls should stop. (Doc. No. 1, ¶¶ 6-12).

After Plaintiff served his complaint, Defendant acknowledged that it made 41 calls to Plaintiff after he first instructed Defendant to stop the calls. At the same time, Defendant argued that the lawsuit was "baseless" and the calls should be excused, out of hand, because Defendant kept calling Plaintiff having associated his number with a series of four different debtors with the

---

[1] http://www.census.gov/genealogy/www/data/2000surnames/

last name Carter.  Thus, the theory goes, Defendant should be left scot-free to harass Marc Carter or anyone similarly named, so long as it continues to do so for some other account belonging to one of the 362,548 some odd Carters.

Defendant misconstrues the procedural application of Rule 11.  In the Fifth Circuit, a district court must apply the "snapshot" rule: sanctions under Rule 11 may not be imposed "merely for the eventual failure of a claim; rather, sanctions are to be applied only where, *at the time of the filing,* the position advocated is unwarranted." *Matta v. May,* 118 F.3d 410, 415 (5th Cir. 1997) (emphasis added); *see also F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1300 (5th Cir. 1994) ("Our precedent does not allow the imposition of Rule 11 sanctions merely for the eventual failure of factual and legal arguments ... sanctions are to be applied where, at the time of the filing, such arguments were unwarranted.").  Rejecting this binding precedent, Defendant argues for sanctions here based on submissions it made to Plaintiff after service of the Complaint was made.  Under the snapshot rule, those submissions are not to be considered in determining whether the Complaint has a reasonable basis in fact and law.  Nevertheless, as set forth herein, Plaintiff's Complaint is sound and stands muster even in the face of Defendant's submissions regarding the call history to Plaintiff's phone number.  There is legitimate legal support for Plaintiff's claims, even if they are based on mistaken identity and Defendant errantly having his phone number associated with four other people named Carter.

Here, contrary to Defendant's arguments, the legislative history of the FDCPA and case law support Plaintiff's claims, even if Defendant made the calls because of mistaken identity, as it argues.  To this end, the legislative history of the FDCPA supports Plaintiff's position that his FDCPA claims may be based on repeated calls made to him that were intended for other people with the last name Carter:

> This bill also protects people who do not owe money at all.  In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts.  This bill will make collectors behave responsibly towards people with whom they deal . . . Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer.  In far too many cases debt collectors do not even bother to double check common names before beginning collection efforts.

H.R. Rep. 95–131, at 8 (1977)

Similarly, in *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117 (D. Nev. 2008), the plaintiffs' claims under Section 1692d of the FDCPA withstood the defendant's summary judgment motion where the defendant's phone calls were made due to mistaken identity on three different accounts with similar names to each other; but none of which were accounts for the plaintiffs.  The first account was for a person named "Sharon Coldwell."  After the plaintiffs informed the defendant that it dialed the wrong number and to stop calling, the defendant then called for a person named "Greg Coldwell."  Again, the plaintiffs informed the defendant it had the wrong number and to stop calling.  Thereafter, the defendant called the plaintiffs for a person named "Greg Colwell."  *Id.* at 1120-21.  The defendant proffered the excuse that because its automated dialing software could not sort by phone number, it could not remove the plaintiffs' phone number from its system except in an account-by-account fashion.  Removing the plaintiffs' phone number from one account did not affect other accounts with the same phone number.  *Id.* at 1121.  On these facts, the *Kerwin* court found that under Section 1692d(5) of the FDCPA, there was a genuine issue as to whether the defendant's repeated phone calls constituted intentional abuse.  *Id.* at 1124.

Significantly, the defendant made only a handful of phone calls to the plaintiffs in *Kerwin.*  In contrast, here Defendant made 41 calls to Plaintiff after he first informed Defendant

that it had the wrong number.  Accordingly, contrary to Defendant's argument, the number and nature of its phone calls to Plaintiff here do not render Plaintiff's FDCPA claims groundless and sanctionable.

<u>**ARGUMENT**</u>

**I.      The Standard for Determining a Rule 11 Motion**

Rule 11 sets forth, in pertinent part:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4).

The purpose of Rule 11 is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990).  "With respect to a legal contention, an argument is not frivolous if the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension,

4

modification, or reversal of existing law or the establishment of new law." *Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, 2006 WL 3246348, at *1 (S.D. Tex. Nov. 7, 2006) (citing Rule 11(b)(2)).  Here, Plaintiff's legal contentions are warranted by existing law; as they are grounded both in the legislative history of the FDCPA and applicable case law.  (*See* pp. 1-2, *supra*).

      The Fifth Circuit has adopted the "snapshot" rule.  "Rule 11 liability is assessed only for a violation existing at the *moment* of filing."  *Marlin v. Moody Nat'l Bank, N.A.,* 533 F.3d 374, 380 (5th Cir. 2008) (emphasis added).  "Rule 11 does not impose a continuing obligation on attorneys, only a standard of good faith and reasonable investigation as of the date the legal documents are signed."  *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 884 (5th Cir. 1988) (*en banc*).  *See also Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, 2012 WL 3150957, at *3 (N.D. Tex. Aug. 3, 2012) (Any facts that the party learned after it made the filing that triggered the Rule 11 motion "could not affect the merits of the motion.") (*citing Marlin, supra,* and *Thomas, supra).*

      In the instant case, Defendant completely ignores the "snapshot" rule in contending that the Complaint is now sanctionable because of the call records it produced after service of the Complaint.  To wit, the Fifth Circuit in *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564 (5th Cir. 2006), set forth as follows:

> Prior to the *Thomas* "snapshot" rule, attorneys in this Circuit had a continuing obligation to review and reevaluate their positions as the litigation developed; a document that initially satisfied Rule 11 might later become the basis for sanctions if new facts were discovered or circumstances changed such that there was no longer a good faith basis for the earlier filing. *Thomas*'s "snapshot" rule ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing.

*Id. at* 570 (citation, internal quotations and footnote omitted).

## II.        The FDCPA Protects Non-Debtors from Calls Based upon Mistaken Identity

Defendant argues that the Complaint is baseless and sanctionable because Defendant called Plaintiff, in succession, on four different accounts with the last name Carter, none of which were for Plaintiff, and stopped making calls on each account once Plaintiff informed Defendant that the phone number was incorrect.  While this argument should be dismissed out of hand because of the "snapshot" rule, Plaintiff's claims are still grounded in existing law, and thus not sanctionable, even in light of the self-defeating call records and attempted excuse Defendant has submitted.

As discussed above, Congress, in enacting the FDCPA, specifically intended to curb the type of phone calls Defendant made here that are "aimed at the wrong person either because of mistaken identity or mistaken facts" and/or "a person who has a common name and is being hounded by a debt collector because of the debts of another person."  (*See* pp. 2-3, *supra*). Plaintiff's Complaint also finds support in *Kirwin*, 559 F.Supp.2d at 1124 (a genuine issue of material fact existed with respect to claimed violation of Section 1692d of the FDCPA where debt collector continued to call plaintiff, in succession, on three different accounts with names similar to each other after the plaintiff informed Defendant it had the wrong number).  (*See* p. 3, *supra,* for further factual discussion of *Kirwin*).

Plaintiff's claims under the FDCPA are further supported by the remedial nature of the Act.  *See Hamilton v. United Healthcare of La.,* 310 F.3d 385, 392 (5th Cir. 2002) "Congress ... has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

Here, Defendant was a serial abuser of calling Plaintiff on the different accounts after Plaintiff informed Defendant it had the wrong number.  According to Defendant's own contentions, it called Plaintiff 41 times after calling on the first Carter account and being informed that it had the wrong number on or about March 12, 2013.  Sixteen of these 41 calls came after Plaintiff again informed Defendant that it had the incorrect number on or about May 6, 2013, while Defendant was calling on the second Carter account it obtained.  Indeed, Defendant was so persistent in its calls to Plaintiff and ignoring of Plaintiff's instructions to stop calling, that it made its next call to Plaintiff (on the third Carter account it obtained) just 5 days later on May 11, 2013.[2]  On or about this date, Plaintiff informed Defendant for the third time that it had the wrong number, yet Defendant still made 15 (of the 41) calls to Plaintiff thereafter, between June 7, 2013 and June 24, 2013 (on the fourth Carter account it obtained).  (*See* Doc. No. 16-1, at ¶¶ 8-13).  And Marc Carter is not alone: another consumer, with a common last name, recently filed a similar lawsuit against CBE.  *See Johnson v. CBE Group, Inc.*, Civil Action No. 3:13-cv-00631 (W.D.N.C. 2013).[3]

The absence of care on CBE's part for citizens' privacy and the record of harassment here establish Plaintiff's claims of a harassing and abusive telephone campaign from Defendant.  In *Kirwin, supra*, the Defendant did not escape liability merely by showing that its phone system did not allow it to pull the plaintiffs' phone number from multiple accounts of other people that it mistakenly associated with their number.  In the instant case, this case will proceed to the discovery phase so Plaintiff can inquire about how it came to be that Defendant repeatedly called

---

[2] Defendant obtained this third Carter account on May 4, 2013 (Doc. No. 16-1 at ¶ 12); a date which overlaps with the timeframe in which Defendant was still making calls to Plaintiff on the second Carter account it obtained (April 12, 2013 – May 6, 2013).  *Id.* at ¶ 10.
[3] The Census reports 1,857,160 people with the last name Johnson.
 *See* http://www.census.gov/genealogy/www/data/2000surnames/.

him even after he informed Defendant that it had the wrong number.  *See, e.g., Quantlab Technologies Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 781-82 (S.D. Tex. 2010) ("[R]ule 11 must not bar the courthouse door to people who have some support for a complaint, but need discovery to prove their case.") (*quoting Kraemer v. Grant County,* 892 F.2d 686, 689 (7th Cir. 1990) (other citation omitted).

Discovery, for example, may show that Defendant was willfully negligent in implementing a phone system that could not remove or detect Carter's phone number from multiple accounts with people sharing his last name.  As the court in *Bank v. Pentagroup Fin., LLC,* 2009 WL 16064203 (E.D.N.Y. June 9, 2009), ruled, a violation for Section 1692d of the FDCPA can be shown by the defendant's negligence, even where there is no intent to annoy, harass or oppress the plaintiff:

> Though it is true that one of the enumerated means of violating the anti-harassment prohibition is the making of telephone calls "with intent to annoy, abuse or harass," § 1692d(5), the list of specified violations is explicitly not exhaustive; it is not intended to "limit[ ] the general application" of the provision's sweeping prohibition of conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." A debt collection program that negligently misplaces numerous calls to a single wrong number could plausibly have the natural consequence of harassment or abuse.

*Id.* at *5.

The odds of Plaintiff *randomly* receiving 41 calls from one debt collector on four unrelated accounts are so slim to be near nonexistent.  Defendant has not explained how it could allow these mistaken calls to occur repeatedly and Plaintiff cannot explain it either without the benefit of discovery.  Far from being a frivolous Complaint, Plaintiff's lawsuit is one that should continue onto the discovery phase.

### III.   Unanswered Calls May be Violative of the FDCPA

Defendant also argues, in part, that Plaintiff's claims are baseless and frivolous because only 2 of the 42 calls were answered.  (Doc. No. 16 at p. 9).  To the contrary, whether an unanswered call is a "communication" under the FDCPA is an issue of triable fact..  *See, e.g., Meadows v. Franklin Collection Service,* 414 Fed. Appx. 230, 234-35 (11th Cir. 2011) (The court specifically rejected a defendant debt collector's claim that its calls were not harassing, under the FDCPA, because the plaintiff did not answer them.); *Cerrato v. Solomon & Solomon,* 2012 WL 6621339, at *4–6 (D. Conn. Dec.18, 2012) (unanswered calls constituted "communications" under the FDCPA where the debt collector's name and telephone number appeared on caller identification display).

### IV.   The Volume of Calls by Defendant is Evidence of Intent to Harass Plaintiff

Defendant also wrongly contends that Plaintiff's claims are baseless because "[t]here is no evidence suggesting that CBE was calling Plaintiff with the intention of harassing him." (Doc. No 16 at p. 9).  Plaintiff's claim under Section 392.302(4) of the Texas Debt Collection Act ("TDCA"), similar to his claim under Section 1692d(5) of the FDCPA, sets forth that: "a debt collector may not oppress, harass, or abuse a person by ... causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."  Tex. Fin. Code § 392.302(4).  Contrary to Defendant's contention, the requisite intent required of this Texas statute, as well as Section 1692d(5) of the FDCPA, is supported by the repeated and continuous calls Defendant made to Plaintiff after Plaintiff demanded that the calls stop supports his claim.  *See, e.g., McCartney v. CitiFinancial Auto Credit, Inc.*, 2010 WL 5834802, at *3 (E.D. Tex. Dec. 14, 2010) *report and recommendation adopted*, 2011 WL 675386 (E.D. Tex. Feb. 16, 2011).  Defendant's intent to

bombard Plaintiff with calls is further demonstrated by the fact that at one point Defendant had two Carter accounts with Plaintiff's phone number at the same time, was told to stop, and stopped on one but not the other account (see p. 7 and fn. 2, *supra*).  As such, Plaintiff's claims are not devoid of a reasonable legal basis that would warrant dismissal of his Complaint or any other sanctions under Rule 11.

## V.    A Non-debtor May Have a Claim under Section 1692f of the FDCPA

Defendant also wrongly contends that Plaintiff's Complaint is sanctionable because Plaintiff's claims under Section 1692f of the FDCPA are frivolous because Defendant "was attempting to collect debts on accounts for individuals other than Plaintiff with the last name Carter."  (Doc. No. 16 at p. 14).  To the contrary, the FDCPA does not protect consumer debtors alone; certain of its provisions can and do apply to others affected by unlawful collection activity.  *See, e.g., Todd v. Collecto, Inc.*, 731 F.3d 734, 738 (7th Cir. 2013) ("courts have stressed that § 1692d is not a protection just for consumers but for any person mistreated by a debt collector", "the reach of § 1692f is readily apparent, and we conclude that anyone aggrieved by a debt collector's unfair or unconscionable collection practices can fall within the provision's zone of interest"); *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 F. App'x 254, 258 (4th Cir. 2012) ("at least three of the FDCPA provisions relied on by Rawlinson contain *no* limitation as to who may invoke them. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f" (emphasis in original)); *Eley v. Evans,* 476 F. Supp. 2d 531, 533 (E.D. Va. 2007) (construing FDCPA as meaning that "any aggrieved party may bring an action" under Sections 1692e or 1692f, even if that aggrieved party is not a debtor).  Thus, Defendant's argument about Plaintiff's status as a non-debtor does not support its motion for sanctions.

**VI.**     **Plaintiff May Claim Injunctive Relief under Texas State Law**

Defendant also makes the argument that Plaintiff is subject to sanctions because his claim for injunctive relief under Texas law is groundless.  To the contrary, Plaintiff finds reasonable legal support for this claim for relief right in the very language of the Texas statute at issue.  To wit, Section 392.403(a)(1) of the TDCA sets forth: "A person may sue for injunctive relief to prevent or restrain a violation of this chapter."  Here, Defendant has already called Plaintiff's phone number on four different accounts for people with the last name Carter.  As such, Plaintiff has a reasonable basis for requesting injunctive relief under this Texas statute to prevent Defendant from continuing to call him.

<u>**CONCLUSION**</u>

For the above reasons, Defendant's Motion should be denied in its entirety.  Plaintiff's claims are well grounded in the policy considerations shown in the legislative history and the case law about protecting non-debtors victimized by debt collection calls because of mistaken identity and/or common last names.  Defendant's practice, if left unchecked, could overwhelm people with such common names as Magistrates Smith and Johnson of this bench.  Plaintiff further requests leave to move for fees incurred in responding to Defendant's frivolous motion.

Dated: December 31, 2013

Respectfully submitted,

By: */s/ Jody B. Burton*_____
Jody B. Burton, Esq.
Attorney-in-charge
Connecticut Bar No. 422773
LEMBERG & ASSOCIATES L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on December 31, 2013, a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS was filed with the Clerk of Court for the United States District Court for the Southern District of Texas using the CM/ECF system and that the document is available online.

                               */s/ Jody B. Burton*
                                 Jody B. Burton, Esq.