IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARC CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 13-2083 |
| | § | |
| CBE GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is a suit under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Texas Debt Collection Act, TEX. FIN. CODE § 392, *et seq.* The defendant, CBE Group, Inc., has moved for sanctions against the plaintiff, Marc Carter, under Federal Rule of Civil Procedure 11, attaching evidence that it asserts shows that there is no basis for relief and that Carter's counsel failed to conduct a reasonable investigation before filing suit. (Docket Entry No. 16). Carter has responded, and CBE has replied. (Docket Entry Nos. 17, 18). Based on the filings and submissions, the pleadings, and the applicable law, this court denies the sanctions motion. The reasons are explained below.

**I.    CBE's Basis for Seeking Sanctions**

CBE argues that it is entitled to sanctions based on the following assertions. CBE had been assigned to collect debts on the accounts of four different individuals, all with the last name "Carter." CBE "associated" plaintiff Marc Carter's home telephone number with all four accounts. As it turned out, none of these accounts belonged to Carter and he did not owe any debt that CBE was authorized to collect.

CBE made one telephone call to Carter's home number to try to collect on one of the four accounts. It is unclear why no more calls were made on that account. CBE made 14 phone calls to Carter's number on a second account before speaking to him. Carter told CBE that his telephone number had been mistakenly linked to the account and not to call the number again. CBE did not make any more calls on the second account, but did call Carter's number again, on a third account. On this is account, CBE made 25 calls to Carter's home number in approximately 3 weeks. Carter did not answer the calls. Carter finally called CBE and again told them that he and his telephone number were incorrectly linked to a debt. CBE did not make more calls on that account. But CBE did make another call to Carter, on a fourth account. He answered, explained that he was not the debtor and the account was not his. No further calls were made on that account. In total, CBE made 42 calls to Carter's home number between March 12 and June 24, 2013. (Docket Entry No. 17 at 7).

When Carter sued, CBE's counsel explained to Carter's counsel the mistaken association of Carter's telephone number with the accounts of four people who shared his last name. (Docket Entry No. 16 at 5–6). CBE also explained that each time it reached Carter and learned that he was the wrong person, his number was removed from that account and CBE did not call him again on that account. CBE did not, however, remove his number from the other accounts under the name "Carter."

Carter did not withdraw the suit. CBE warned it would seek sanctions and complied with the safe harbor of Rule 11. This motion followed.

Carter responded to the sanctions motion by emphasizing that after he first told CBE not to call his number, they made 41 more calls. (Docket Entry No. 17 at 7). He argues that even if the

calls were on other accounts, they were nonetheless to his home phone number, after he had told CBE that the number was wrongly associated with a different debt.

Carter argues:

> According to Defendant's own contentions, it called Plaintiff 41 times after calling on the first Carter account and being informed that it had the wrong number on or about March 12, 2013.  Sixteen of these 41 calls came after Plaintiff again informed defendant that it had the incorrect number on or about May 6, 2013, while Defendant was calling on the second Carter account it obtained.  Indeed, Defendant was so persistent in its calls to Plaintiff and ignoring of Plaintiff's instructions to stop calling, that it made its next call to Plaintiff (on the third Carter account it obtained) just 5 days later on May 11, 2013.  On or about this date, Plaintiff informed defendant for the third time that it had the wrong number, yet Defendant still made 15 (of the 41) calls to Plaintiff thereafter, between June 7, 2013 and June 24, 2013 (on the fourth Carter account it obtained).  (*See* Doc. No. 16-1, at ¶¶ 8-13).  And Marc Carter is not alone: another customer, with a common last name, recently filed a similar lawsuit against CBE.  *See Johnson v. CBE Group, Inc.*, Civil Action No. 3:13-cv-00631 (W.D.N.C. 2013).

(Docket Entry No. 17, p. 7).

Carter essentially argues that even assuming the information CBE has provided in its sanctions motion is true, sanctions are not justified because his complaint stated a proper basis for recovery under state and federal law.

## II.    The Legal Standards

Section 1692k(a)(3) of the FDCPA states that, "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).  Under the FDCPA, it would be CBE's burden to make an affirmative showing of bad faith and harassment. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985), *modified on*

3

*other grounds*, 761 F.2d 237 (5th Cir. 1985).  Although there is scant Fifth Circuit guidance on what constitutes bad faith and harassment under § 1692k, courts that have awarded fees under this section appear to have done so in cases that have proceeded through discovery or otherwise been litigated for some period, and the plaintiff has not dismissed claims shown to be meritless.  *See, e.g.*, *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1306 (M.D. Fla. 2010) (finding that sanctions were warranted when "Plaintiff's counsel failed to dismiss . . . claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion").

In this case, there has been no discovery or motions practice.  CBE has not sought sanctions under the FDCPA, but rather under Rule 11, which provides, in pertinent part:

> (b)  Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law . . . ;
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

FED. R. CIV. P. 11.  If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  *Id.*

In determining whether counsel or a represented party has violated Rule 11, courts apply "an objective standard of reasonableness under the circumstances." *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc)). An attorney need not provide an absolute guarantee of the correctness of the legal theory advanced in pleadings he files. *Id*. "Rather, the attorney must certify that he has conducted reasonable inquiry into the relevant law." *Id.*

### III. Discussion

CBE presents several arguments in support of granting sanctions. First, CBE argues that the facts of this case are similar to those in *Tucker*. In that case, the court awarded sanctions after granting summary judgment in favor of the defendant debt collector. The defendant had made 57 calls to the plaintiff, more than in this case. *Tucker*, 710 F. Supp. 2d at 1303. But in *Tucker*, the court had already granted summary judgment in the defendant's favor. *Id.* at 1306. The court concluded that there was no evidence that the defendant had engaged in "oppressive conduct" such as repeatedly making calls after it was asked to stop. *Id*. at 1305. In that case, there was no instruction given to the defendant that the telephone number associated with the account did not belong to the plaintiff. The plaintiff in that case did not ask the defendant to stop calling. *Id.* at 1306 n.8. The present case is distinguishable. Unlike in *Tucker*, there has been no motion for, or ruling granting, summary judgment. And there is evidence that after the plaintiff told the debt collector that it had the wrong number and instructed it not to call, the calls continued.

CBE also argues that the complaint is frivolous because when it did speak to Carter, it did not attempt to collect a debt in those calls. The information CBE has provided, however, shows that the purpose of each phone call was to attempt to collect a debt. This argument is unpersuasive.

5

CBE's primary argument is that the court should view separately each of the four accounts CBE incorrectly associated with Carter's home telephone number. When CBE called Carter on the first account and spoke to him, CBE learned that the telephone number did not belong to the person who had the account and debt. Carter told CBE not to call him again. CBE did call, but not on the same account. CBE called on a second account, also listed under "Carter" and with the same telephone number. CBE continued to call that number until Carter again told CBE it had the wrong debtor and not to call the number again. But CBE continued to call the same number, on a third account. Carter again told CBE not to call, but CBE did call, on a fourth account.

The fact that four separate accounts were involved does not appear to make this complaint frivolous. CBE was told in the first telephone conversation with Carter that his telephone number was not properly linked to a delinquent account. CBE nonetheless telephoned Carter's number repeatedly on a second account before getting the same information. After that, CBE telephoned Carter's number repeatedly on a third account before getting the same information. Unlike in *Turner*, the record evidence here shows that Carter told CBE not to call his number again, yet CBE did so repeatedly.

The case of *Kirwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117 (D. Nev. 2008), is instructive and militates against granting CBE's motion for sanctions. In *Kirwin*, the defendant debt collector telephoned the plaintiff several times, each time on one of three different delinquent accounts. *Id.* at 1120–21. The individuals holding the accounts all had similar names to, but none was, the plaintiff. After each call, the plaintiff instructed the defendant not to call her number again. As in the present case, the debt collector in *Kirwin* removed the plaintiff's telephone number from one delinquent account, but continued to make calls on other delinquent accounts associated with the

plaintiff's number. And as in the present case, each time the defendant spoke to the plaintiff, she instructed the debt collector not to call her number again. In moving for summary judgment, the defendant presented evidence that it used dialing software that could not sort by telephone number and therefore could not remove the telephone number from its automatic-dialing system except on an account-by-account basis. *Id.* at 1121. Removing the number from one account did not affect other accounts associated with the same number. The district court denied summary judgment, finding a genuine factual dispute material to determining whether the repeated telephone calls—far fewer than the 41 at issue here—amounted to intentional abuse under § 1692d of the FDCPA. *Id.* at 1123–25.

The fact that there were four different debt accounts assigned to CBE for collection, all associated with Carter's phone number, does not make Carter's claims that CBE's continued calls to his home violated the FDCPA and TDCPA sanctionable under Rule 11.

The motions for sanctions is denied. This ruling does not indicate the court's views on the proper disposition of a motion for summary judgment. That will obviously turn on the evidence that is presented in the summary judgment record, viewed under the Rule 56 standard.

SIGNED on February 7, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge